## APPEAL OF CLIVER-WRIGHT-RAINEY CO.

Docket No. 1324. Submitted June 8, 1925. Decided September 9, 1925.

> 1. Upon the evidence herein, *held*, that the taxpayer was not a personal service corporation.
> 2. Special relief under section 328 of the Revenue Act of 1918 will not be granted where the evidence fails to establish the right thereto.

*George Roscoe Davis, Esq.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before IVINS, MARQUETTE, and MORRIS.

This is an appeal from a determination of the Commisioner proposing to assess additional income and profits taxes for the years 1918 and 1919, in the aggregate amount of $14,707.01, and denying personal service classification to the taxpayer.

From the evidence submitted the Board makes the following

FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of Ohio in 1915, with its principal place of business at Cincinnati, to conduct a brokerage and commission business in cotton goods. It is the successor of a partnership, formed in 1904 by A. E. Cliver, H. C. Rainey, and A. E. Wright, each of whom was an experienced salesman in a particular line of cotton goods. The capital stock of the corporation at its organization was $75,000. All of the capital stock was issued to the original partners in equal proportions, except for two qualifying shares, and, as a result of the profits left in the partnership, the interest of each partner in the partnership assets at the date of incorporation equaled the par value of the stock issued to them.

In 1919 the capital stock of the corporation was increased to $100,000, and the additional $25,000 in stock was issued to one L. G. Sadler for cash.

During the years 1918 and 1919 the stock of the corporation was held as follows:

|  | 1918 | 1919 |
|---|---|---|
|  | *Shares* | *Shares* |
| A. E. Cliver, president | 369 | 1 |
| H. C. Rainey, vice president | 229 | 350 |
| A. E. Wright: | | |
| Secretary-treasurer | 150 | |
| Second vice president | | 200 |
| R. B. Hopkins: | | |
| General manager | 1 | |
| Treasurer | | 133 |
| A. L. Rainey | 1 | 1 |
| L. G. Sadler, secretary | | 315 |
|  | 750 | 1,000 |

Each of the stockholders devoted his entire time to the business except that, in 1918, A. L. Rainey, who owned one share, was absent in the Army, and in 1919 H. C. Rainey, vice president, was inactive because of ill health. The gross sales of the company for 1918 were $1,560,059.20, and for 1919 were $1,322,344.69. The company purchased and sold goods on its own account in both years, and approximately 5 per cent of the gross sales in each year is attributable to the sales in which it acted as principal. The balance of the sales in each year were made on a commission basis. The inventory of the company on January 1, 1918, was $26,096.48, and the closing inventory for that year was $14,203.71; the inventory as of December 31, 1919, was $27,895.58.

For the year 1918, 78.8 per cent of the company's gross income arose from commissions, and for the year 1919, 87.5 per cent of the gross income was derived from commissions.

The commission business of the taxpayer was conducted under contracts with cotton mills whereby the corporation was given certain exclusive territory in some cases, while in others its rights were not exclusive. Arrangements were made in advance as to the amount of the commissions, and the price of the goods was in all cases fixed by the mills. The taxpayer advanced money to the mills when they needed it, using local credit or funds of the corporation, and loaned about 50 per cent of the market value on their goods. The mills also used the storage facilities of the taxpayer extensively. It was a part of the taxpayer's agreement and a part consideration in the fixing of the commission that the taxpayer should pay the mills the amount of the sales which it effected on receipt of the bill of lading. The taxpayer also extended credit to customers and assumed the credit risks in most cases, while in others the mills stood one-half the loss.

The evidence shows that the taxpayer used from $100,000 to $150,000 of capital, either borrowed or invested, during each year, in financing the mills and making advances, and that a material part of its income from commissions on sales was derived from capital, the use of such capital being a material consideration in the fixing of the amount of the commissions which were to be paid.

DECISION.

The determination of the Commissioner is approved.

OPINION.

MARQUETTE: This appeal resolves itself into the question of whether capital was a material income-producing factor. We have had occasion in various appeals to set forth the elements of a personal service corporation and to state that each of these elements must be present to bring any corporation within the statute, and we do not feel that anything would be gained by repetition. *Appeal of Bryant & Stratton Commercial School, Inc.*, 1 B. T. A. 32; *Appeal of Scheffler Hair Colorine Co.*, 1 B. T. A. 61. In the last analysis, each case must depend upon its own peculiar facts, and it is not so much a question of what the elements are which constitute a personal service corporation within the meaning of the statute, but whether the facts in a particular case bring it within the language of the act.

The facts herein show that the taxpayer had capital of from $100,000 to $150,000 which it used in advancing to mills the amount of bills of lading for goods consigned to customers to whom it had made sales; that it assumed credit risks or divided losses with the mills and consistently advanced money to finance the mill, using borrowed money or its own capital, and that the commissions to be paid were fixed upon the basis of such service. It further appears that the taxpayer bought and sold goods on its own account as a principal. It had substantial inventories, both in 1918 and 1919, and together with the use of capital in obtaining its commissions we feel that capital was a material income-producing factor and that the taxpayer is not entitled to classification as a personal service corporation.

The taxpayer further claims that it is entitled to special relief under the provisions of section 328 of the Revenue Act of 1918. No evidence was presented from which the Board can find any facts which would warrant such relief, and the determination of the Commissioner with respect thereto must consequently be approved.

ARUNDELL not participating.